UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| COREY K. SMITH, | ) |
| Petitioner, | ) |
| vs. | ) No. 4:13-CV-2111-SPM |
| TERRY RUSSELL, | ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Corey K. Smith's ("Petitioner's") *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1) (Doc. 8). For the following reasons, the petition will be denied.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The Missouri Court of Appeals summarized the facts as follows:

> Viewed in the light most favorable to the verdicts, the following evidence was adduced at trial. On the night of the incident, the victim and his girlfriend went to dinner. When the victim and his girlfriend returned home at about 10:30 p.m., Defendant was sitting on the stoop next door to the victim's home. The victim and Defendant had argued with each other several days earlier and earlier that day. The victim walked over to Defendant and said, "Dude, didn't I tell you don't sit on this stoop?" Defendant stood up and told the victim the stoop did not belong to the victim. They argued briefly and got "in each other's face." The victim then said, "Do what you do" or "Go ahead and . . . whatever you going to do, do it."
> Defendant then made a stabbing motion toward the victim, and the victim backed up. The victim had his hands in the air, trying to defend himself as the two men moved down the street. Defendant made one or two stabbing motions toward the victim, and then the fight broke up. One witness saw something in Defendant's hand. The victim was not holding anything in his hands. The victim did not have a weapon when he fought Defendant, and no weapon was found at the scene.

>   After the fight, Defendant walked away, and went to his home in Jennings, Missouri. The victim walked to a friend's house holding his chest where he collapsed. The victim later died from a knife wound to his chest.
>   The victim's girlfriend and other witnesses identified Defendant as the man who stabbed the victim. Defendant was later arrested at his home in Jennings.
>   At the trial, Defendant claimed that he acted in self-defense. Defendant testified that prior to the day of the incident, he had argued with the victim. He testified that, at that time, the victim had told him "to wait right here." Defendant said the victim told him "to be right here when he get back." Defendant stated he took these words as threats. Defendant further testified that, immediately prior to the stabbing, he again argued with the victim, and that the victim put his hands in his pockets. Defendant testified he thought the victim could be pulling a gun, knife, or "anything" out of his pocket. He stated that at that moment he was distracted by someone else, when the victim started punching him in the face. Defendant testified that he grabbed his knife, and his "hand went up for defending [himself] and that's when [he] cut [the victim]." Defendant stated he was afraid for his life, and he was only trying to get the victim off him. He stated he did not think the victim was seriously injured because the victim was still walking. He testified he "really wanted to stay," but he left the scene because he feared he would be shot in retaliation.
>   Defendant also presented the testimony of Sharon Bernard ("Bernard"). She testified three days before the incident, the victim told her that he "ran" the neighborhood, and that "he was going to let [Defendant] know that he runs the neighborhood" and "show him." Bernard testified she informed Defendant of what the victim said. Bernard stated she told Defendant to avoid the victim.
>   The jury subsequently found Defendant guilty of murder in the second degree and armed criminal action. The trial court sentenced Defendant as a prior offender to twenty years' imprisonment for each count to be served concurrently.

Resp't Ex. F, at 2-4.

Petitioner filed a direct appeal, in which he raised two arguments: (1) that the trial court erred by allowing the State to comment on and adduce testimony regarding Petitioner's post-*Miranda* silence, to impeach his self-defense claim; and (2) that the state improperly misstated Missouri's self-defense law in closing argument. Resp't Ex. D, at 15-17. The Missouri Court of Appeals found Petitioner's arguments meritless and affirmed the Petitioner's convictions. Resp't Ex. F.

In his amended motion for post-conviction relief, Petitioner asserted three claims of ineffective assistance of counsel. Resp't Ex. H, at 25-52. First, Petitioner argued that his defense

2

counsel was ineffective in the way that he handled and objected to the State's attempts to elicit evidence of Petitioner's post-*Miranda* silence to impeach his self-defense claim. Resp't Ex. H, at 29-40. Second, Petitioner argued that defense counsel was ineffective by failing to call a witness, Marqueesha Perry, to testify as to why Petitioner was in possession of the weapon used to kill the victim. *Id.* at 40-44. Third, Petitioner argued that defense counsel was ineffective because he promised the jury in the opening statement that the jury would hear certain testimony from Sharon Bernard, yet failed to elicit such testimony. *Id.* at 44-47. After holding an evidentiary hearing, the motion court denied Petitioner relief on each of his claims. Resp't Ex. H, at 53-68. Petitioner raised all three of these claims in his appeal of the denial of his motion for post-conviction relief. Resp't Ex. I, at 16-18. In May 2013, the Missouri Court of Appeals affirmed the motion court's ruling. Resp't Ex. K.

In the instant petition, Petitioner raises the same three ineffective assistance of counsel claims he pursued in his motion for post-conviction relief, as well as a claim of ineffective assistance of post-conviction relief counsel.

## II. LEGAL STANDARDS

### A. Legal Standards for Reviewing Claims on the Merits

Federal habeas review exists only "as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). Accordingly, "[i]n the habeas setting, a federal court is bound by AEDPA [the Antiterrorism and Effective Death Penalty Act] to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003) (citing 28 U.S.C. § 2254). Under AEDPA, a federal court may not grant habeas relief to a state prisoner with

respect to any claim that was adjudicated on the merits in the state court proceedings unless the state court's adjudication of a claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established Supreme Court precedents "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court decision involves an "unreasonable application" of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407-08; *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004) (citations and internal quotation marks omitted); *see also Rice v. Collins*, 546 U.S. 333, 338-39 (2006) (noting that state court factual findings are presumed correct unless the habeas petitioner rebuts them through clear and convincing evidence) (citing 28 U.S.C. § 2254(e)(1)).

In the instant case, each of Petitioner's claims is based on an assertion that his counsel was ineffective. The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To show ineffective assistance of

counsel, Petitioner must show both that "[his] counsel's performance was deficient" and that "the deficient performance prejudiced [his] defense." *Id.* at 687; *see also Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014). To show deficient performance, Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. "Judicial scrutiny of counsel's performance must be highly deferential," and Petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." *Id.* at 689 (citation and internal quotation marks omitted). To demonstrate prejudice, a Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id* at 694. "An error by counsel even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

When an ineffective assistance claim has been addressed by the state court, this Court must bear in mind that "[t]aken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 131 S. Ct 1388, 1410 (2011)). In the context of a habeas claim, it is not sufficient for a petitioner to "show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance," *Bell*, 535 U.S. at 698-99. "Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id*. at 699.

### B. Procedural Default

To preserve a claim for federal habeas review, a state prisoner must present that claim to the state court and allow that court the opportunity to address the claim. *Moore-El v. Luebbers*,

5

446 F.3d 890, 896 (8th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). "Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted." *Id.* The federal habeas court will consider a procedurally defaulted claim "only where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992)). To demonstrate cause, a petitioner must show that "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, a petitioner must demonstrate that the claimed errors "worked to his *actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.*" *United States v. Frady*, 456 U.S. 152, 170 (1982); *accord Ivy v. Caspari*, 173 F.3d 1136, 1141 (8th Cir. 1999). Lastly, in order to assert the fundamental miscarriage of justice exception, a petitioner must "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)).

### III. DISCUSSION

In the petition, Petitioner raises four claims of ineffective assistance of counsel: (1) ineffective assistance of trial counsel based on counsel's handling of the State's use of Petitioner's post-*Miranda* silence to impeach his self-defense claim; (2) ineffective assistance of trial counsel based on the failure to call certain witnesses to testify about why Petitioner was in possession of the knife used to fatally wound the victim; (3) ineffective assistance of trial counsel based on trial counsel's promise during opening statement that that the jury would hear certain testimony from witness Sharon Bernard; and (4) ineffective assistance of post-conviction relief counsel based on

6

the failure to move for rehearing upon the appellate court's denial of post-conviction relief. The Court will address each claim in turn.

### A. Ground One: Ineffective Assistance of Counsel—Failure to Object Properly to Evidence of Petitioner's Post-*Miranda* Silence

In Ground One, Petitioner argues that his trial counsel was ineffective in the way he handled the State's attempt to impeach Petitioner's self-defense claim with evidence of his post-*Miranda* silence, in violation of *Doyle v. Ohio*, 426 U.S. 610 (1976). Petitioner raised this claim in his motion for post-conviction relief and in his appeal of the denial of his motion for post-conviction relief, and the Missouri Court of Appeals rejected it on the merits.

The facts relevant to this claim are as follows. On cross-examination, the State asked Petitioner, "[W]hen the police came and actually arrested you at your house out in Jennings, you didn't tell the police then, 'Hey. I had to defend myself'", did you?" Resp't Ex. A, at 314. Petitioner's trial counsel objected, arguing that the question was a mischaracterization with no foundation. *Id.* at 315-16. The trial court sustained the objection but permitted the State to ask whether Petitioner told the police about self-defense when he was arrested. *Id.* at 316-17. The following exchange then occurred:

> State: Mr. Smith, when you were arrested out in Jennings, Missouri, you didn't tell the police that you were defending yourself, did you?
>
> Petitioner: No.
>
> State: At any point in time, you never told the police, "Hey, I was just defending myself. I thought he was going to kill me."
>
> Petitioner: No, ma'am.

*Id.* at 317. Petitioner's trial counsel did not object to these questions. During the opening phase of closing argument, the State argued, "If this was self-defense, he would have told police that when he was arrested. He would have shown them the knife. He would have told anybody this, but 14

7

months later, he's got a story to tell you. It's self-defense." *Id.* at 339. The State also argued, "If it weren't a story, we would have heard about it 14 months ago. Absolutely, you would have. He would have told the police, 'This is what happened. Here is the knife.'" *Id.* at 341. Petitioner's counsel did not object. During the rebuttal phase of closing argument, the State argued, "He ran to Jennings with the weapon and then waited. Waited for it to go away, but then when they came up, he didn't tell the police it was self-defense. He didn't tell anybody it was self-defense." *Id.* at 361. At that point, Petitioner's trial counsel objected on the ground that this was improper comment that took away from Petitioner his right to remain silent. *Id.* at 361-62. The objection was overruled, and the State went on to argue, "He didn't tell the police it was self-defense, and why not? Because that's not what happened that day, ladies and gentlemen." *Id.* Petitioner's counsel later raised the issue of the use of Petitioner's post-*Miranda* silence in a motion for a new trial, but the motion was not timely filed. *See* Resp't Ex. B, at 47-50; Resp't Ex. G, at 12.

In his direct appeal, Petitioner asserted that the State had violated *Doyle* by improperly using his post-*Miranda* silence to impeach him. Resp't Ex. D, at 18-45. Reviewing for plain error because trial counsel had not preserved the issue for review, the Missouri Court of Appeals found no manifest injustice that would require reversal. Resp't Ex. F, at 4-10. The Missouri Court of Appeals correctly recognized that in *Doyle*, the Supreme Court held that once a person has been arrested and given his *Miranda* warnings, it would violate due process to permit his silence to be used to impeach an explanation subsequently offered at trial. *Id.* at 4. The court then found that the State's first relevant question during cross-examination ("Mr. Smith, when you were arrested out in Jennings, Missouri, you didn't tell the police that you were defending yourself, did you?") was not a *Doyle* violation, because that question referred to the moment when Petitioner was arrested in Jennings, and there was no evidence that Petitioner had been advised of his *Miranda* rights at

that time. *Id.* at 6. The court further found that the State's comments during closing argument did not violate *Doyle* because they also referred to the time of Petitioner's arrest, a time at which there was no evidence that *Miranda* warnings had been given. *Id.* at 7. The court found that the only possible question that had violated *Doyle* was the second question, in which the State asked Petitioner if he had told the police that he had acted in self-defense "[a]t any point in time." *Id.* at 7-8. The court went on to find no manifest injustice, reasoning that there had not been repeated *Doyle* violations; that Defendant's claim of self-defense was "transparently frivolous" because there was no evidence the victim was armed with a weapon or made threats to use a weapon, and thus there was no reasonable basis for Petitioner's use of deadly force; and that there was overwhelming evidence of Petitioner's guilt, including the multiple witnesses who identified Petitioner as the person who stabbed the victim, Petitioner's admission that he stabbed the victim, the absence of evidence that the victim had a weapon or used deadly force during the fight, and the consciousness of guilt demonstrated by Petitioner's leaving the scene without providing aid or calling 911. *Id.* at 8-9.

In his motion for post-conviction relief, Petitioner brought a separate claim of ineffective assistance of counsel related to his counsel's handling of the alleged *Doyle* violations. Petitioner alleged that his trial counsel was ineffective in several ways: by failing to properly object when the State asked questions about Petitioner's post-*Miranda* silence; by failing to make it clear to the court that the State's comments about his silence referred to a period after Petitioner had been read his *Miranda* rights; by failing to make a record about when Petitioner was read his *Miranda* rights; and by failing to file a timely motion for a new trial, thereby leaving this issue unpreserved for appellate review. Resp't Ex. H, at 29-40.

9

The motion court held a hearing on this claim. Resp't Ex. G. At the hearing, the officer who arrested Petitioner testified that he arrested Petitioner at his home, took him to the St. Louis Police Headquarters, and only then read him his *Miranda* rights. *Id.* at 6-7. Petitioner's trial counsel also testified at the hearing. He admitted that "in hindsight, [he] probably gave the State a little too much, a little too much leeway in [the line of questioning regarding Petitioner's silence]" and that "obviously, in hindsight, the first time around [he] made the wrong objection." *Id.* at 12-13. He also acknowledged that he had not filed the motion for new trial on time. *Id.* at 12.

The motion court denied relief on this claim, finding that Petitioner could not show that his trial counsel's alleged errors prejudiced him under *Strickland.* Resp't Ex. H, at 59-64. It relied on the same reasoning used by the Missouri Court of Appeals in finding no manifest injustice from the alleged *Doyle* violation, though it acknowledged that the standards were different. *Id.* The Missouri Court of Appeals affirmed, relying on similar reasoning. It concluded:

> Given that the State committed only one possible *Doyle* violation, that the movant's claim of self-defense was very weak, and that the evidence of his guilt was overwhelming, the movant has failed to establish a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. We find no *Strickland* prejudice, and deny [Petitioner]'s first point.

Resp't Ex. K, at 5.

The Missouri Court of Appeals' adjudication of this claim was not objectively unreasonable and was not contrary to, or an unreasonable application of, clearly established federal law. As to the first question ("Mr. Smith, when you were arrested out in Jennings, Missouri, you didn't tell the police that you were defending yourself, did you?"), the Missouri courts' finding that there was no *Doyle* violation to which counsel should have objected was reasonable in light of the facts and the relevant law. At the motion hearing, the arresting officer plainly testified that Petitioner was not given his *Miranda* rights at the time of his arrest at his home, but rather at the

10

police station. An arrestee's pre-*Miranda* silence does not constitute a *Doyle* violation, and such silence may be used to impeach an explanation offered at trial. *See Fletcher v. Weir,* 455 U.S. 603, 606 (1982); *Jenkins v. Anderson*, 447 U.S. 231, 240 (1980). Petitioner offers no other basis on which to find that the question was impermissible. Petitioner's counsel did not exhibit deficient performance for failing to object to this permissible question. Similarly, the state courts reasonably determined that the State's comments during closing argument referred to a pre-*Miranda* time period and thus did not constitute *Doyle* violations. As to the second question, which may have constituted a *Doyle* violation, the Missouri Court of Appeals' conclusion that the admission of this question and answer did not result in prejudice to Petitioner under *Strickland* was reasonable. Significantly, even if Petitioner's counsel had successfully objected to the question about Petitioner's post-*Miranda* silence, the jury would still have heard about the fact that at the time of Petitioner's arrest, he did not tell the arresting officer that he had been acting in self-defense. In addition, as the state court noted, the self-defense case was weak, in light of the absence of any evidence that the victim had a weapon or ever used deadly force during the fight and the evidence that Petitioner left the scene without calling the police. In light of those facts, it was not unreasonable for the Missouri Court of Appeals to find that no prejudice resulted from the single possible *Doyle* violation that occurred.

For all of the above reasons, Ground One will be denied.

### B. Ground Two: Ineffective Assistance of Trial Counsel—Failure to Call Witnesses to Testify About Why Petitioner Was in Possession of a Knife

In Ground Two, Petitioner argues that his trial counsel was ineffective in failing to call as witnesses two individuals, Marqueesha Perry and "Tony," to testify about why he was in possession of a knife at the time of the crime. The Court will address each witness separately.

1. Failure to Call Tony as a Witness

Petitioner did not raise an ineffective assistance of counsel claim based on the failure to call Tony as a witness in his amended motion for post-conviction relief under Missouri Supreme Court Rule 29.15, nor did he include it in his appeal from the denial of that motion. *See* Resp't Ex. H, at 29-47; Resp't Ex. I, at 16-18. An ineffective assistance of counsel claim is procedurally defaulted if a petitioner fails to raise it in a Rule 29.15 motion or fails to raise it in the appeal from the denial of such a motion. *See Interiano v. Dormire*, 471 F.3d 854, 856 (8th Cir. 2006). Thus, to the extent that this claim is based on the failure to call Tony, it is procedurally defaulted. Petitioner does not argue that there is cause to excuse the default, nor does he argue that the miscarriage of justice exception to procedural default should apply. Therefore, the Court is barred from considering the claim as it relates to the failure to call Tony as a witness, and it will be denied.

2. Failure to Call Ms. Perry as a Witness

Petitioner raised an ineffective assistance of counsel claim based on his trial counsel's failure to call Ms. Perry as a witness in his amended motion for post-conviction relief and in the appeal of the denial of that motion. Resp't Ex. H, 40-44; Resp't Ex. I, at 17. The Missouri Court of Appeals considered the claim and rejected it on the merits. Resp't Ex. K, at 6-7.

Petitioner argues that his trial counsel should have called Ms. Perry to show a valid reason—other than a plan to harm the victim—why Petitioner was in possession of a knife at the time of the crime. Ms. Perry was the owner of the restaurant where Petitioner worked at the time of the crime. At the post-conviction evidentiary hearing, Ms. Perry testified that Petitioner was working on the day of the incident, that he used a knife as part of his work, and that all of the individuals at the restaurant had knives and kept them clipped to their belts. Resp't Ex. G, at 26. She also testified that Petitioner "probably should have left it off because all of us leave them." *Id.*

She testified that she was available and willing to testify at the time of trial and would have testified to those facts if called as a witness at trial. *Id.* at 27.

In affirming the denial of this claim, the Missouri Court of Appeals stated:

> Ms. Perry's testimony would not have unqualifiedly supported the movant. The movant was charged and tried for the offense of first-degree murder, and the State argued that the movant had a plan to wait for the victim, provoke him, and kill him in an altercation. The jury, however, rejected the State's theory of premeditation, and convicted the movant of the lesser-included offense of second-degree murder. Had Ms. Perry testified as she did at the evidentiary hearing—that the movant probably should have left his knife at work as she and the other workers did—her testimony could have actually supported the State's theory of premeditation.
>
> Furthermore, the movant testified at trial that the knife was a pocket knife that he used to cut boxes open at the restaurant. No evidence contradicted this testimony. Thus, any evidence from Ms. Perry that the movant routinely used a knife in his work at the restaurant would have been merely cumulative. Trial counsel was not ineffective for not offering cumulative testimony.

Resp't Ex. K, at 7.

The Missouri Court of Appeals' decision did not involve an unreasonable application of *Strickland* to the facts of this case. With regard to the first prong, the court reasonably found that Ms. Perry's testimony was cumulative, because Petitioner had already testified that the knife used in the crime was one he used to cut boxes open at the restaurant where he worked, and because no evidence was presented that contradicted that testimony. *See* Resp't Ex. A, at 307-08. At the hearing on the motion for post-conviction relief, Petitioner's trial counsel testified that he did not "think to use [Ms. Perry] as a witness to validate . . . his use of a knife at the restaurant" and that he "felt [Petitioner's] testimony would suffice for proving that point." Resp't Ex. G, at 10. Trial counsel is not ineffective for failing to adduce cumulative evidence. *See Winfield v. Roper*, 460 F.3d 1026, 1033 (8th Cir. 2006). *See also Hall v. Luebbers*, 296 F.3d 685, 693 (8th Cir. 2002) ("We conclude that failure to present cumulative evidence is neither contrary to nor an unreasonable application of the governing principles found in *Strickland*."). Moreover, the State

court reasonably determined that Ms. Perry's testimony that Petitioner "probably should have" left the knife at the restaurant rather than taking it with him could well have been harmful to Petitioner's case, because it might have supported the State's theory that Petitioner kept the knife with him as part of a deliberate plan to kill the victim. Petitioner's counsel was not ineffective for failing to call a witness whose testimony would have been cumulative and perhaps even detrimental.

With regard to the second *Strickland* prong, Petitioner cannot demonstrate that counsel's failure to call this witness resulted in prejudice to him. The State's theory was that Petitioner was guilty of murder in the first degree, because Petitioner deliberated the murder with cool reflection and had a plan to wait for the victim, provoke him, and kill him. *See* Resp't Ex. A, at 333-34, 336-37. Petitioner argues that Ms. Perry's testimony would have undermined that theory. However, it is apparent that the jury rejected that theory even without Ms. Perry's testimony, because it did not find Petitioner guilty of murder in the first degree, but only of murder in the second degree. *Id.* at 364. Thus, Petitioner offers no basis on which to find that there is a reasonable likelihood that the outcome of the trial would have been different had Ms. Perry been called as a witness.

For all of the above reasons, the state court's adjudication of this claim was not objectively unreasonable, and Ground Two will be denied.

### C. Ground Three: Ineffective Assistance of Counsel—Promise of Testimony in Opening Statement

In Ground Three, Petitioner asserts that his trial counsel was ineffective because he promised the jury in the opening statement that the jury would hear testimony from Ms. Sharon Bernard about a prior incident between Petitioner and the victim, yet later decided not to have Ms. Bernard testify about that incident. Petitioner argues that left Petitioner with no credible evidence to support his self-defense theory. Petitioner raised this claim in his motion for post-conviction

14

relief and in his appeal of the denial of his motion for post-conviction relief, and the Missouri Court of Appeals rejected it on the merits.

In his opening statement, Petitioner's trial counsel stated:

> And you'll also hear about another argument between [Petitioner] and [the victim] where it got to the point where [the victim] began pushing [Petitioner], and it was only because of a woman named Sharon Bernard who was there who got in between them and was able to stop anything from happening more on that day.

Resp't Ex. A, at 148. Petitioner's trial counsel did not indicate who would be providing testimony about this incident. At trial, Petitioner's counsel elicited testimony from Ms. Bernard about a conversation she had with the victim in which the victim threatened to show Petitioner who ran the neighborhood, and she testified that she told Petitioner what the victim had said. *Id.* at 290-91. Petitioner's counsel did not ask Ms. Bernard any questions regarding the prior argument between Petitioner and the victim in which the victim had been pushing Petitioner. On cross-examination, in response to a related question, Ms. Bernard stated, "When it first happened, that little incident with them arguing and fighting, and breaking up . . ."; the State objected; and the court told Ms. Bernard to respond only to the question asked, but did not strike the testimony. *Id.* at 295. In addition, when Petitioner's counsel asked Petitioner about this argument, Petitioner stated, "We had a [*sic*] argument on the corner, and that's when Sharon got in the middle of the argument." *Id.* at 298. The State objected "based upon our prior conversations," and the objection was sustained; however, the testimony was not stricken. *Id.* In addition, other witnesses testified that Petitioner and the victim had had arguments or had "had some words" prior to the crime at issue. *Id.* at 156, 182, 211-12. During closing argument, the State did not mention the absence of testimony from Ms. Bernard. *Id.* at 333-42, 356-62.

At the evidentiary hearing on Petitioner's motion for post-conviction relief, Petitioner's trial counsel testified that at the time of his opening statement, he had intended to have Ms. Bernard

15

testify about the prior incident between Petitioner and the victim and that he did not anticipate an issue with that testimony. Resp't Ex. G, at 14. He testified that during a later off-the-record discussion, the trial judge informed him that if Ms. Bernard were to testify to that prior incident, it would open up the door to allow the State to bring in past arrests and other character evidence regarding Petitioner. *Id.* Petitioner's trial counsel then decided that the harm of having Petitioner's criminal history come to light would outweigh the good that Ms. Bernard's testimony might be able to do, and he made a strategic decision not to introduce her testimony about the prior incident. *Id.* at 15-16.

The Missouri Court of Appeals affirmed the motion court's denial of this claim. Resp't Ex. K, at 7-8. It stated:

> From the evidence, the jury could easily infer that [Petitioner] and the victim engaged in an altercation before the night of the stabbing. The State did not mention counsel's "unfulfilled promise" in closing. The evidence of the movant's guilt was overwhelming as we outlined in [the ineffective assistance of counsel claim described in Ground One]. Thus, on this record, we find no reasonable probability that the result of the trial would have been different had Ms. Bernard testified that on an earlier occasion the victim "began pushing" [Petitioner].

Resp't Ex. K, at 8.

The Missouri Court of Appeals' decision did not involve an unreasonable application of *Strickland* to the facts of this case. Even with the limits placed on Ms. Bernard's testimony, the jury still heard that there had been prior arguments between Petitioner and the victim. The state court reasonably found that Petitioner could not show prejudice from the minimal difference between what Petitioner's counsel promised in the opening statement and what the evidence actually showed, particularly given that the State did not comment on that difference during closing argument.

16

Moreover, although the Missouri Court of Appeals did not address the deficient performance prong of *Strickland*, the Court finds that Petitioner also cannot establish that prong. The evidence shows that at the time of the opening statement, Petitioner's counsel planned to call Ms. Bernard to testify about the prior incident and did not believe that would present an issue. Petitioner offers nothing to suggest that his trial counsel's original belief was unreasonable, nor does Petitioner offer any reason to believe that his trial counsel's subsequent decision to change strategy after he received additional information from the trial judge was an unreasonable one. Thus, particularly in light of the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance and might be considered sound trial strategy, the Court finds that Petitioner cannot satisfy the deficient performance prong of *Strickland*.

Petitioner also appears to argue that his trial counsel made a "deal" with the State, without Petitioner's knowledge, that trial counsel would not use Ms. Bernard as a witness in exchange for the State not cross-examining Petitioner. However, the record does not support the existence of any such deal with the State. Instead, the evidence developed at the evidentiary hearing shows that Petitioner's counsel changed his strategy after the trial judge informed him that Ms. Bernard's testimony might open the door to unfavorable evidence.

Petitioner also appears to be arguing that Petitioner's trial counsel was ineffective for calling Ms. Bernard as a witness at all. He notes that evidence of Ms. Bernard's criminal history was introduced at trial and was referenced by the State during closing argument to argue that she was not credible. He suggests that if trial counsel believed that preventing the admission of criminal history evidence was important, trial counsel should not have presented the testimony of Ms. Bernard, who had a criminal record. Petitioner did not assert this claim in his amended motion for post-conviction relief or in his appeal from the denial of that motion, so it is procedurally

17

defaulted. Petitioner does not argue that there is cause to excuse the default, nor does he argue that the miscarriage of justice exception to procedural default should apply. Therefore, the Court is barred from considering the claim as it relates to the ineffectiveness of counsel in calling Ms. Bernard as a witness. Moreover, even assuming that the Court were to consider this claim, it would be without merit, because Petitioner cannot satisfy either prong of *Strickland*. The decision to call Ms. Bernard despite her criminal record does not suggest deficient performance, because it would be reasonable for defense counsel to decide that opening the door to negative character about *the defendant* would be significantly more harmful to the case than would opening the door to negative character evidence about a particular witness. In addition, Petitioner cannot show any reasonable likelihood that the outcome of the trial would have been different had Ms. Bernard not been called to testify. Even if the jury found that her criminal record made her less credible as a witness and disregarded her testimony, Petitioner was placed in the same position he would have been had she not testified at all.

For all of the above reasons, the state court's adjudication of this claim did not involve an unreasonable application of *Strickland* to the facts of this case. Ground Three is denied.

### D. Ground Four: Ineffective Assistance of Post-Conviction Counsel—Failure to Move for Rehearing

Finally, Petitioner argues that post-conviction review counsel was ineffective by failing to file a motion for rehearing or an application for transfer upon the appellate court's decision to deny relief. However, ineffective assistance of post-conviction review counsel is not a ground for relief in a federal habeas proceeding. 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."). *See also Coleman*, 501 U.S. at 752 ("There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a

petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.") (citation omitted). Thus, Ground Four will be denied.

## IV. CONCLUSION

For all of the above reasons, Petitioner is not entitled to federal habeas relief. Under 28 U.S.C. § 2253, an appeal may not be taken to the court of appeals from the final order in a 28 U.S.C. § 2254 proceeding unless a circuit judge or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). To grant such a certificate, the judge must find that the Petitioner "has made a substantial showing of the denial of a constitutional right." § 2253(c)(2); *Tiedman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citation omitted). The Court finds that reasonable jurists could not differ on Petitioner's claims, so the Court will not issue a certificate of appealability. Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**.

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue because Petitioner has failed to make a substantial showing that he has been denied a constitutional right. 28 U.S.C. § 2253.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 8th day of March, 2017.